IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| MFI-DPLH, LLC, | |
| | * |
| Plaintiff, | |
| | * |
| v. | CIVIL NO.: WDQ-09-2358 |
| | * |
| JESSE H. INGRAM, ESQUIRE *et al.*, | |
| | * |
| Defendants. | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

MFI-DPLH, LLC ("DPLH") sued Jesse H. Ingram, Esq. ("Ingram"), Jesse H. Ingram, PLLC ("Ingram PLLC"), and Ingram & Associates, LLC ("Ingram & Associates") for breach of contract, breach of fiduciary duty, misuse of trust money, and negligence. Pending are DPLH's motion for partial summary judgment and Ingram and Ingram PLLC's motion to implead Steven Jones and The Jones Group Holdings, LLC. For the following reasons, the motion for partial summary judgment will be granted in part and denied in part, and the motion to implead will be granted.

I.  Background

DPLH is a Florida limited liability company. Shawn R. McIntyre Aff. ¶ 1, Oct. 6, 2009. Ingram is a Columbia, Maryland attorney. *See* Pl.'s Mot. Summ. J., Ex. 2. Ingram PLLC is a

Maryland professional limited liability company.  Compl. ¶ 4.[1]

Ingram & Associates is a Columbia, Maryland law firm.  Pl.'s

Reply to Ingram & Associates' Opp., Ex. 1.  Ingram is Of Counsel

to Ingram & Associates.  *Id.*; Pl.'s Reply to Ingram & Associates'

Opp., Ex. 1.[2]

In April 2009, DPLH wanted to escrow $250,000, which was to

be paid to Steven Jones and The Jones Holding Group

(collectively, "Jones") at DPLH's instruction.[3]  McIntyre Aff. ¶

2.  DPLH and Jones agreed that DPLH would wire the funds to

Ingram's escrow account at Bank of America.  Pl's Mot. Summ. J.,

Ex. 3.  On April 30, 2009, DPLH's attorney, Braden J. Montierth

of the law firm Roetzel & Andress, emailed and faxed Ingram an

agreement governing the handling of the funds.  *Id.*  The

agreement was addressed to "Dr. Jesse Ingram, Ingram &

Associates, LLC," contained the office address of Ingram &

---

[1] The information provided about Ingram PLLC in ¶ 4 of the
Complaint is undisputed.

[2] Ingram's son and daughter, Damani K. Ingram and Anika T.
Ingram, are also attorneys at Ingram & Associates.  Pl.'s Reply,
Ex. 1. In an email DPLH's counsel, Steven Thompson, Ingram, Esq.
explained that he was "with Ingram & Associates" and he that he
also "practice[s] D.C. law and federal Maryland practice under
Jesse H. Ingram, PLLC."  *Id.*, Ex. 2.

[3] The nature of the business transaction between DPLH and Jones
is unclear.  In their proposed Third-Party Complaint, Ingram and
Ingram PLLC allege only that The Jones Holding Group is a Nevada
limited liability company with its principal place of business in
Charlotte, North Carolina.  Mot. to Implead, Ex. 1.  They also
allege that Steven Jones is the president of The Jones Holding
Group and resides in Charlotte.  *Id.*

Associates, and was faxed to Ingram & Associates.  *Id*.

Under the agreement, DPLH would wire into "[Ingram's] escrow account at Bank of America . . . $250,000."  *Id*.  Ingram was "instructed to hold the $250,000 in escrow barring further written direction from [Roetzel & Andress]."  *Id*.  Ingram signed and faxed the agreement to Montierth on May 1, 2009.  *Id*.  Ingram signed on behalf of "Ingram & Associates, LLC," and the facsimile transmittal sheet indicated that the fax was from "Ingram & Associates, LLC."  *Id*.  DPLH wired the funds to Ingram's account.  McIntyre Aff. ¶ 4.

On August 26, 2009, DPLH requested that Ingram return the escrowed funds.  *Id*. ¶ 5; Ex. 4.  The demand letter from Stephen E. Thompson of Roetzel & Andress, stated that:

> Pursuant to the direction of . . . DPLH and per the the terms of that certain Escrow Letter dated April 30, 2009 . . ., you are hereby instructed to immediately wire to our IOTA Trust Account no later than the end of business tomorrow the full amount of our client's $250,000.00 that has been held in your escrow account for the benefit of DPLH, together with any accrued interest.

*Id*., Ex. 4.  Thompson enclosed a copy of the April 30, 2009 agreement and the routing information for Roetzel & Andress's IOTA account.  *Id*.

On August 31, 2009, Ingram emailed Thompson regarding the Demand Letter:

> As you may have reason to know, the funds are no[] longer in my IOTA account.  They were distributed long ago according to Mr. Steve Jones' instructions.  Thus,

I was quite disturbed and perplexed to receive the
Deposit Release Demand from your office!  Please be
informed that Mr. Jones represented to me that the
business transaction between [DPLH] and [Jones] was
successful and that all parties were satisfied with the
outcome.  Obviously, that is not the case!

I have assertively addressed this pivotal matter with
Mr. Jones and . . . he represented to me on . . .
August 28th that the funds will be returned to my Iota
[a]ccount by the close of business.  I will immediately
wire those funds to your account upon receiving them.

Pl.'s Mot. Summ. J., Ex. 7.  Ingram did not return the funds,

*id.*, Ex. 6 (email from Stephen E. Thompson, Esq. to Jesse H.

Ingram, Esq., August 31, 2009), and Thompson sent another demand

letter by email and Federal Express, *id.*, Exs. 5, 6.  Ingram

emailed Thompson that he was "working relentlessly to preclude

the necessity for employing the judicial process in order to

return the funds," and that "[d]espite the appearance . . . [the]

funds were not intentionally distributed in contravention of

[the] authorization or instructions!"  *Id.*, Ex. 6.  He promised

to "speak with Mr. Jones [that night] about [Jones's] failed

efforts to return the funds to [Ingram's] account."  *Id.*

On September 8, 2009, DPLH sued Ingram, Ingram PLLC, and

Ingram & Associates.  Paper No. 1.  After the suit was filed,

Ingram continued to promise DPLH's lawyers that he would return

the deposit.  *Id.*, Ex. 8 (email from Jesse H. Ingram, Esq. to

Gary Adler, Esq., counsel for DPLH, September 18, 2009).  In a

September 18, 2009 email to DPLH's counsel, Ingram wrote that he

was still attempting to "assist Mr. Jones in returning the funds

4

to [Ingram, Esq.'s] escrow." *Id*.  Ingram also stated that "should Mr. Jones fail[] to live up to his obligation to return [the] funds by the time [the] answer to your Complaint is due [,] I will satisfy that obligation and immediately pursue an action against Mr. Jones myself." *Id*.

On September 29, 2009, Ingram answered the Complaint.  Paper No. 7.  On October 6, 2009, DPLH moved for partial summary judgment on liability.  Paper No. 12.  On November 16, 2009, Ingram moved to implead Jones.  Paper No. 20.

II.  Analysis

A.    DPLH's Motion for Partial Summary Judgment

1.    Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

5

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr.*, *Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

### 2.   The Need for Additional Discovery

In their Opposition, Ingram and Ingram PLLC argue that DPLH's motion should be denied because more time is needed for discovery.[4]   Rule 56(f) permits a court to deny summary judgment or order a continuance if the nonmovant shows through affidavits that he may not properly oppose a motion for summary judgment. Fed. R. Civ. P. 56(f); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).   The Fourth Circuit "place[s] great weight on the Rule 56(f) affidavit." *Evans*, 80 F.3d at 961.   "A party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when [he] failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit."   *Id.*

Ingram and Ingram PLLC have not sought a continuance for

---

[4] Under the Court's October 2, 2009 Scheduling Order, the deadline for discovery is February 12, 2010.   Paper No. 11.

further discovery or filed a Rule 56(f) affidavit.  Although their opposition to DPLH's motion for summary judgment refers to a lack of discovery, this reference is an insufficient basis for denial of DPLH's motion.

  3. Count 1: Breach of Escrow Agreement

  DPLH argues that the defendants breached the April 30, 2009 escrow agreement by releasing the deposit to Jones before DPLH instructed them to do so.

   a. Liability of Ingram and Ingram PLLC

  It is undisputed that (1) the escrow agreement was sent to Ingram at "Ingram & Associates, LLC," (2) Ingram signed it on behalf of "Ingram & Associates, LLC," and (3) faxed it to DPLH's counsel with an "Ingram & Associates, LLC" facsimile transmittal sheet.  DPLH argues that Ingram is personally bound by the agreement and Ingram & Associates and Ingram PLLC are bound by Ingram, their agent.

  Not all the defendants are bound by the agreement.  If, as DPLH argues, Ingram acted on behalf of Ingram & Associates, then only Ingram & Associates is bound by the contract.[5]  *See, e.g.*, *Hill v. Country Concrete*, 108 Md. App. 527, 532, 672 A.2d 667,

---

[5] Given that its name appeared on the face of the contract, Ingram & Associates was a fully disclosed principal.  "[W]hen, upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as solely to bind the principal unless otherwise intended."  *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 577, 667 A.2d 649, 653 (1995).

670 (Md. Ct. Spec. Apps. 1995).

To determine whether Ingram intended to be personally bound by the agreement, the Court first examines the face of the agreement. *See Morrison v. Baechtold*, 93 Md. 319, 48 A. 926 (1901). Only if the agreement is ambiguous may extrinsic evidence be considered to determine the intentions of a party to be bound. *Id*.

The agreement is unambiguous. The agreement (1) is addressed to "Dr. Jesse H. Ingram, Ingram & Associates, LLC," (2) bears the office address of Ingram & Associates, and (3) has only one signature block, which indicates that the agreement was signed by "Jesse H. Ingram, Attorney" on behalf of "Ingram & Associates, LLC." Nothing in the agreement indicates that Ingram meant to assume personal responsibility for the agreement. Nor is there any mention of Ingram PLLC. Only Ingram & Associates was bound by the agreement. Accordingly, DPLH's motion for partial summary judgment on Count One must be denied as to Ingram and Ingram PLLC.

> b.   Ingram & Associates
>
> i. Relationship to Ingram

Ingram & Associates argues that it is not liable under the agreement because Ingram was not acting as its agent in the

transaction and did not have the authority to sign the contract on its behalf.  DPLH contends that, as Of Counsel, Ingram was the agent of Ingram & Associates.  DPLH also argues that if Ingram had no actual authority to act for Ingram & Associates, Ingram & Associates is liable under the doctrines of "apparent authority" and "agency by estoppel."

Agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."  *Green v. H & R Block*, 355 Md. 488, 503 735 A.2d 1039, 1047 (1999).  "A person may be deemed an agent based on actual authority or apparent authority."  *Jackson v. 2109 Brandywine*, LLC, 180 Md. App. 535, 565, 952 A.2d 304, 321 (Md. Ct. Spec. Apps. 2008).  "Actual authority exists only when the principal knowingly permits the agent to exercise the authority or holds out the agent as possessing it."  *Id*.

"Under the equitable doctrine of apparent authority, a principal will be bound by the acts of a person purporting to act for him when the words or conduct of the principal cause the third party to believe that the principal consents to or has authorized the conduct of the agent."  *Id*.  "Like apparent authority, an agency by estoppel can arise only whe[n] the principal, through words or conduct, represents that the agent has authority to act and the third party reasonably relies on

those representations." *Johns Hopkins Univ. v. Ritter*, 114 Md. App. 77, 689 A.2d 91 (Md. Ct. Spec. App. 1996).[6]  The plaintiff has the burden of proving the nature and extent of the principal-agent relationship.  *Green v. H & R Block*, 355 Md. 488, 503 735 A.2d 1039, 1047 (1999).

The only evidence that DPLH has provided about Ingram's relationship to Ingram & Associates is that he was "Of Counsel" to the firm.  Given the variety of relationships between a lawyer and a firm that this term may signify,[7] and that Ingram &

---

[6] "Although the cases and texts refer to . . . 'apparent authority' and to 'agency by estoppels,' there [is] no clear line of demarcation [between them].  Each results from certain acts or manifestations by the alleged principal . . . to third parties." *Reserve Ins. Co. v. Duckett*, 240 Md. 591, 600, 214 A.2d 754, 759 (1965).

[7] The American Bar Association's Committee on Ethics and Professional Responsibility has identified four different meanings of the term "Of Counsel":

> There appear to be four principal patterns of such relationships, all of which in the Committee's view are properly referred to by the title 'of counsel' (or one of its variants). Perhaps the commonest of such relationships is that of a part-time practitioner, who practices law in association with a firm, but on a basis different from that of the mainstream lawyers in the firm. Such part-time practitioners are sometimes lawyers who have decided to change from a full-time practice, either with that firm or with another, to a part-time one, or sometimes lawyers who have changed careers entirely, as for example former judges or government officials.
>
> A second common use of the term is to designate a retired partner of the firm who, although not actively practicing law, nonetheless remains associated with the firm and available for occasional consultation.

Associates denies that Ingram had actual authority to act on its behalf,[8] DPLH has not shown that there is a genuine issue of material fact about Ingram's actual authority to act for Ingram & Associates.

DPLH also argues that Ingram acted with apparent authority and Ingram & Associates is estopped from denying his agency.  It is undisputed that (1) Ingram & Associates listed Ingram as an attorney on its website and its MySpace page and (2) Ingram used the mailing address, fax number, and office stationary (*e.g.*, the facsimile transmittal sheet) of Ingram & Associates in the transaction with DPLH.  Further, it is apparent that DPLH relied on Ingram & Associates' representations that Ingram was its agent: DPLH addressed the agreement to "Jesse H. Ingram, Ingram & Associates" and sent the agreement to Ingram & Associates via fax.  That the agreement was signed on behalf of Ingram &

---

A third use of the term is to designate a lawyer who is, in effect, a probationary partner-to-be: usually a lawyer brought into the firm laterally with the expectation of becoming partner after a relatively short period of time.

A fourth, relatively recent, use of the term is to designate a permanent status in between those of partner and associate -- akin to the category just described, but having the quality of tenure, or something close to it, and lacking that of an expectation of likely promotion to full partner status.

ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 90-357(1990).

[8] *See* Anika T. Ingram Aff. ¶¶ 3-6, Oct. 23, 2009.

Associates and sent under cover of Ingram & Associates' facsimile transmittal sheet suggest that DPLH's reliance was reasonable.

Ingram and Ingram & Associates have submitted affidavits that state in general terms that DPLH was aware that Ingram was not acting as an agent in the transaction.  A self-serving affidavit consisting of "conclusory" statements without objective corroboration is insufficient to defeat summary judgment.  *See Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).[9]  On these facts, a reasonable jury would have to find that Ingram was acting as the apparent agent of Ingram & Associates.

### ii. Enforceability of the Agreement

The defendants argue that there was no escrow agreement because the funds were meant as a payment for Jones, not as a deposit to be held on DPLH's behalf.  They contend that the putative escrow agreement was merely a confirmation that they were permitted to receive funds on Jones's behalf.  Because the payment was meant for Jones, they contend that they were free to forward the funds to Jones at any time.

Under the agreement, the defendants were "instructed to hold the $250,000.00 in escrow barring further written direction from [DPLH's counsel]."  Pl.'s Mot. Summ. J., Ex. 2.  The language is

---

[9] *See also National Enters. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

clear: the funds were not to be withdrawn without DPLH's permission.[10]   Further, the defendants promised "to hold the $250,000.00 *in escrow*."  *Id*. (emphasis added).[11]   The agreement specified "the condition" that was required before the funds could be released to Jones, *i.e.*, "direction from [DPLH's counsel]."  The parties had an agreement that the $250,000.00 deposit would be held in escrow pending further instruction from DPLH.

The defendants contend that the escrow agreement is not enforceable because it was not supported by consideration.  "To be binding and enforceable, contracts ordinarily require consideration."  *See Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 148, 835 A.2d 656, 661 (2003).  "[C]onsidera-tion may be established by showing a benefit to the promisor or a

---

[10] "Maryland adheres to the principle of the objective interpreta-tion of contracts.  The court will give effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean." *Clancy v. King*, 405 Md. 541, 557, 954 A.2d 1092, 1101 (2008) (internal citations and quotation marks omitted).

[11] *Black's Law Dictionary* defines "escrow" as "property delivered by a promisor to a third party to be held by the third party for a given amount of time *or until the occurrence of a condition*, at which time the third party is to hand over the . . . property to the promisee." *Black's Law Dictionary* (8th ed. 2004) (emphasis added); *see also Restatement (Second) of Contracts* § 103 cmt. a ("[Escrow] has come in practice to refer to a security device: one or both parties to a transaction deposit property or an instrument with a third party until some condition has occurred . . .; the delivery is said to be 'in escrow.'").

detriment to the promisee." *Id*.   DPLH has not produced evidence that it provided consideration in exchange for the promise to hold DPLH's funds in escrow pending further instruction from its attorneys.

However, DPLH may be entitled to recover on the alternative contract theory of "detrimental reliance."  Detrimental reliance requires (1) a clear and definite promise; (2) a reasonable expectation by the promisor that the promise will induce action or forbearance on the part of the promisee; (3) reasonable action or forbearance by the promisee; and (4) a detriment to the promisee that can be avoided only by the enforcement of the promise.  *Pavel Enters. v. A.S. Johnson Co.*, 342 Md. 143, 166, 674 A.2d 521, 533 (*citing* Restatement (Second) of Contracts § 90(1)).

By signing the April 30, 2009 agreement, Ingram bound Ingram & Associates to its terms, *i.e.*, that the $250,000 would be held in escrow pending further instruction from DPLH's counsel.  The defendants should have expected that returning the signed agreement would induce DPLH to wire the deposit to the accounts listed in the agreement.  Relying on the promise to hold the funds, DPLH wired them into the escrow account.  The reliance was reasonable; the terms of the agreement were clear, and Ingram, acting with apparent authority for Ingram & Associates, indicated that it would abide by those terms.  As a result of this

reliance, DPLH incurred a detriment--the loss of the money--when the funds were disbursed to Jones without informing DPLH.  Only by enforcing the promise and requiring the return of DPLH's deposit can the detriment to DPLH be rectified.

Ingram & Associates has not produced evidence that would permit a jury to find for it on Count One.  Accordingly, DPLH's motion for partial summary judgment on this count will be granted as to Ingram & Associates.

### 4.   Count Two: Breach of Fiduciary Duty

DPLH contends that its April 30, 2009 agreement created a fiduciary relationship with the defendants, and by disbursing DPLH's deposit without authorization, the defendants breached their fiduciary duty.  "Maryland does not recognize a separate tort action for breach of fiduciary duty."  *Int'l Bhd. Of Teamsters v. Willis Coroon Corp.*, 369 Md. 724, 728, 802 A.2d 1050, 1052 n. 1 (2002) (*citing Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 520-21 (1997)).  Although the alleged "breach . . . may give rise to one or more causes of action, in tort or contract," breach of fiduciary duty is not an independent ground for relief.  *Id*.  Accordingly, DPLH's motion for partial summary judgment on Count Two must be denied.

### 5.   Counts Three: Misuse of Trust Money

DPLH argues that Ingram is liable under Md. Code Ann., Bus.

Occ. & Prof. § 10-306.[12]  Under § 10-306, "a lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."  Md. Code Ann., Bus. Occ. & Prof. § 10-306.  Although an attorney's violation of § 10-306 may give rise to disciplinary proceedings, *see id.* § 10-307, or criminal liability, *see id.* § 10-606, no case is found in which a private right of action under the statute has been recognized.  Accordingly, DPLH's motion for partial summary judgment on Count Three must be denied.

> 6.    Count Four: Negligence and Gross Negligence

> > a.    Ingram and Ingram PLLC

If Ingram acted as the apparent agent of Ingram & Associates, he may have personal tort liability.  *See Consumer Prot. Agency v. Morgan*, 387 Md. 125, 175, 874 A.2d 919, 948 (2005) "[A]gents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body."  *Id.*[13]

The statutory prohibition against the misuse of trust money by lawyers, Md. Code Ann., Bus. Occ. & Prof. § 10-306, is relevant to DPLH's negligence claim.  A typical negligence action

---

[12] Ingram is the only defendant named in Count Three.
[13] "Of course, participation in the [alleged] tort is essential to liability." *Id*.  As noted above there is no evidence that Ingram PLLC was involved in the transaction giving rise to this suit.  Accordingly, DPLH's motion for summary judgment on Count Four must be denied as to Ingram PLLC.

requires: (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a breach of that duty, and (3) injury to the plaintiff that (4) proximately resulted from the defendant's breach of duty. *Brown v. Dermer*, 357 Md. 344, 356, 744 A.2d 47, 54 (2000), *overruled in part on other grounds by Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 835 A.2d 616 (2003).

"[W]he[n] there is an applicable statutory scheme designed to protect a class of persons which includes the plaintiff . . . the defendant's duty ordinarily is prescribed by the statute . . . and the violation of the statute . . . is evidence of negligence."[14] *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78, 835 A.2d 616, 620 (2003).  "Under this principle . . . all that a plaintiff must show is: (a) the violation of a statute . . . designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of."  *Id*. at 621.  "Proximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent."

---

[14] *See also Brown v. Dermer*, 357 Md. 344, 358, 744 A.2d 47, 55 (2000) ("The general rule regarding the standard of conduct applied under decisions to measure negligence does not supersede a prescription of conduct by the legislature . . . . What governs is the legislature's intention . . . not necessarily what a 'reasonably prudent' person would do under [the circumstances].").

*Id.* Such proof does not require a finding of negligence; the fact finder may still conclude that the defendant's conduct was reasonable under the circumstances, thus precluding liability. *See id.*

DPLH argues that Ingram violated § 10-306. As noted above, under § 10-306, "a lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Md. Code Ann., Bus. Occ. & Prof. § 10-306. Trust money" is "a deposit, payment, or other money that a person entrusts to a lawyer to hold for the benefit of a client or a beneficial owner." *Id.* § 10-301. A "beneficial owner" is a "person, other than the client of a lawyer, for whose benefit a lawyer is entrusted to hold trust money." *Id.*

DPLH is within the class of persons the statute is meant to protect: persons who entrust their funds to attorneys for safekeeping.[15] The undisputed evidence is that (1) Ingram is a lawyer; (2) DPLH entrusted the funds to Ingram so that they could be held in escrow; (3) Ingram was to hold the funds either for the benefit of DPLH or of his client, Jones; and (4) Ingram released the money to Jones in violation of his promise to hold

---

[15] *See Attorney Grievance Comm'n v. Pattison*, 292 Md. 599, 608, 441 A.2d 328, 332 (1982) ("[I]t is essential that all members of the legal fraternity be strongly and constantly impressed with the truism that in handling moneys and properties belonging to their clients and others that they accept them in trust and are strictly accountable for their conduct in administering that trust[.]").

it in escrow, and thus for a purpose other than that for which it was entrusted to him.

The undisputed evidence is that Ingram's mishandling of the funds proximately caused DPLH's loss; had he abided by the agreement to await instruction before disbursing to Jones, DPLH would have been able to recover the money on demand.

Given this unrebutted evidence, no reasonable jury could find that Ingram exercised reasonable care under the circumstances.[16]  Indeed, even Ingram has stated that the funds were distributed (albeit unintentionally) in violation of the agreement, and promised DPLH that if Jones failed to return the funds, Ingram would "satisfy the obligation [himself]." Pl.'s Mot. Summ. J., Ex. 8 (email from Jesse H. Ingram, Esq. to Gary Adler, Esq., counsel for DPLH, September 18, 2009).  DPLH is entitled to partial summary judgment on its negligence claim against Ingram.

DPLH has not provided evidence that Ingram was grossly negligent.  Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences

---

[16] *See also* *Mayor of Baltimore v. Hart*, 895 Md. 394, 910 A.2d 463 (2006) (*quoting Phila., Wil., & Balto. R.R. v. Kerr*, 25 Md. 521, 531)) ("It may be said, in general, that any failure by one engaged in the pursuit of his own occupation or business, to observe precautionary rules or regulations established by competent authority, to guard against accidents and prevent injuries to others, is in legal contemplation, a want of ordinary care.").

as affecting life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre v. Pope*, 402 Md. 157, 187, 935 A.2d 699, 717 (2007). "Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only if he inflicts injury intentionally or is so utterly indifferent to the rights of other that he acts as if such rights did not exist." *Id*.

DPLH has not alleged or presented evidence that Ingram intentionally or recklessly disbursed the escrowed funds in violation of the agreement. The emails from Ingram to DPLH's counsel suggest that he misunderstood the nature of the agreement, which he honestly (if unreasonably) believed permitted him to disburse the funds to Jones at Jones's request. Although these actions establish negligence, they do not establish gross negligence.

Accordingly, the motion for partial summary judgment on Court Four against Ingram will be granted on DPLH's negligence claim but denied on its gross negligence claim.

### b.   Ingram & Associates

The doctrine of agency by estoppel applies to tort claims. *See Debbas v. Nelson*, 389 Md. 364, 385, 885 A.2d 802, 815 (2005). "One who represents that another is his . . . agent and thereby causes a third person justifiably to rely upon the care or skill

of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a[n] . . . agent as if he were such." *Id*.  As discussed above, Ingram & Associates has not opposed DPLH's evidence of apparent authority with evidence that would permit a reasonable jury to find that Ingram did not act as its apparent agent.  Ingram & Associates is thus liable for the harm Ingram caused DPLH.  Accordingly, DPLH's motion for partial summary judgment on Count Four will be granted as to Ingram & Associates.

B.   Ingram and Ingram PLLC's Motion to Implead Jones

Under Rule 14(a), a defendant, as a third-party plaintiff, may bring suit against another party for all or part of the plaintiff's claim against the third-party plaintiff."  Fed. R. Civ. P. 14(a).  If the third-party plaintiff files the third-party complaint more than 14 days after serving the original answer, leave of court must be obtained.  *Id*.  The decision whether to grant leave is committed to the sound discretion of the Court.  *DTM Research, LLC v. AT&T Corp.*, 179 F.R.D. 161, 162 (D. Md. 1998).  In exercising this discretion, the Court balances the interest in promoting efficiency by trying related claims together against the danger of delay or complication in the underlying case.  *See id.*

Ingram and Ingram PLLC's answers were served on DPLH on September 29, 2009.  Paper Nos. 8, 9.  Their motion to implead

21

was filed on November 16, 2009.   Paper No. 20.   Thus, they require leave of Court to implead Jones.   Disposing of Ingram and Ingram PLLC's claims against Jones would promote efficiency by resolving, in one case, the liability for the loss of DPLH's deposit.   Given that this decision resolves only DPLH's motion for summary judgment on liability, the case will proceed.   Any additional delay that will come from impleading Jones will likely be insubstantial, and would be outweighed by the economy that would be gained.   Accordingly, Ingram and Ingram PLLC's motion to implead will be granted.

## III. Conclusion

   For the reasons stated above, DPLH's motion for partial summary judgment will be granted in part and denied in part, and Ingram and Ingram PLLC's motion to implead will be granted.


January 20, 2010                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge